# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JONES, | Case No. 1:20-cv-01689-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | (Doc. 1) |
| Defendant. | |

## I.   INTRODUCTION

On November 30, 2020, Plaintiff James Jones ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   BACKGROUND

Plaintiff protectively filed an application for SSI payment on August 29, 2017, alleging that he became disabled on December 25, 2012, due to trauma, hip injury, and "various physical

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 9, 10.)

injuries." (Administrative Record ("AR") 18, 174–83, 203.)  Plaintiff was born on September 27, 1979, and was 33 years old as of the alleged onset date.  (AR 210.)  He graduated high school and has no relevant past work experience.  (AR 30, 204.)

**A.   Relevant Medical Evidence[2]**

   **1.   Samra Khan, M.D.**

On May 24, 2018, Plaintiff presented to Dr. Khan complaining of increasing pain in his right hip and pain in his right pelvis and thigh when walking. (AR 390, 461.)  Upon examination, Plaintiff was found to have normal but painful range of motion in his right hip.  (AR 392, 463.)

On July 2, 2018, Plaintiff presented for a follow-up appointment.  (AR 469.)  He complained of persistent pain in his right hip and reported that he was still walking with a limp, with increasing difficulty in moving up stairs.  (*Id.*)  Dr. Khan examined Plaintiff and noted normal respiratory, cardiovascular, abdomen, and extremity findings.  (AR 471.)  Examination findings from August to December 2018 were largely unchanged, with the additional notation that Plaintiff was walking with a cane.  (*See* AR 476, 480–81, 487, 492, 498.)

   **2.   Michael Andrew Hoosier, PA-C**

On February 15, 2019, Plaintiff presented to Mr. Hoosier, a physician assistant ("PA"), complaining of right leg and hip pain, and for pain management.  (AR 672, 676.)  Upon examination, PA Hoosier observed that Plaintiff used a cane and had an abnormal gait.  (AR 673.)  Plaintiff was unable to walk on his heels or toes.  (*Id.*)  PA Hoosier also noted that Plaintiff had a normal range of motion in his cervical spine and upper extremities.  (AR 673–74.)  Plaintiff had reduced range of motion and strength in his right hip.  (AR 675.)  PA Hoosier's notes record that a 2018 MRI of Plaintiff's hip showed advanced degenerative osteoarthropathy of the right hip, and a 2017 x-ray of Plaintiff's pelvis showed abnormal configuration of the right femoral head "probably secondary to trauma."  (AR 676.)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

On February 26, 2019, PA Hoosier submitted a medical source statement on behalf of Plaintiff, assessing Plaintiff's physical residual functional capacity ("RFC").³ PA Hoosier diagnosed Plaintiff with right hip and leg pain, noting that Plaintiff experiences muscle aches, painful joints, weakness, and loss of strength. (AR 458–60.) The statement identified the above-mentioned MRI and x-ray in support of PA Hoosier's assessment. (AR 458.) According to PA Hoosier, Plaintiff could, in an eight-hour workday: stand/walk with a cane for less than two hours; sit for about four hours; lift and carry ten pounds rarely and less than ten pounds occasionally; balance and kneel rarely; handle objects and reach in front of his body occasionally; and finger objects and reach overhead rarely. (AR 459–60.) PA Hoosier also opined that Plaintiff could never twist, stoop, crouch/squat, or climb ladders or stairs, is unable to walk for long periods, and is "limited to distance and heights." (*Id.*)

On April 12, 2019, Plaintiff complained of right leg pain. (AR 660.) PA Hoosier noted that Plaintiff's gait was abnormal and that Plaintiff was using a cane. (AR 661.) Upon examination, Plaintiff was found to have reduced strength in his lower extremities, normal range of motion in the thoracolumbar spine, negative straight leg raise, and no pain to palpitation of the spine. (AR 661–63.) Treatment notes from May to September 2019 were largely unchanged. (*See* AR 631–33, 637–39, 643–45, 649–51, 655–57.)

On April 16, 2020, Plaintiff continued to report pain in his right leg, which was aggravated by walking and "activity." (AR 604.)

### 3. Birgit Siekerkotte, M.D.

On March 2, 2018, Dr. Siekerkotte performed a comprehensive internal medicine evaluation of Plaintiff. (AR 378–82.) Dr. Siekerkotte noted that Plaintiff's chief complaint was right leg pain. (AR 378.) She observed that Plaintiff was "a morbidly obese male in no acute distress who push[ed]

---

³ RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' " *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

himself from the seat with a cane and ha[d] great difficulty doing so." (AR 379.) Dr. Siekerkotte further noted that Plaintiff walked slowly with a cane and was limping on his right side; Plaintiff could squat only about five inches and could not stand on his right leg alone. (AR 380.) Dr. Siekerkotte ultimately assessed Plaintiff with right hip pain and osteoarthritis of the right hip, with a history of hip fracture. (AR 382.) Dr. Siekerkotte opined Plaintiff could stand and walk for up to two hours and had no limitations on sitting. (*Id.*) She further opined that Plaintiff could lift and carry less than ten pounds both occasionally and frequently "based on [Plaintiff] needing a cane," and occasionally climb stairs stoop, kneel, and crawl. (*Id.*) Plaintiff should never crouch and should avoid balancing and climbing ladders. (*Id.*) According to Dr. Siekerkotte, Plaintiff's ability to work on uneven ground and around heights or machinery is limited; Plaintiff needs to use a cane. (*Id.*)

### 4. Prior Administrative Medical Findings ("PAMF")[4]

On March 16, 2018, state agency consultant G. Dale, M.D., reviewed Plaintiff's medical history at the initial consideration level. (AR 64–79.) Dr. Dale determined that Plaintiff had severe impairments of obesity and reconstructive surgery of weight bearing joint. (AR 69–72.) Dr. Dale found that Plaintiff's allegations of disability are documented, but the listing level of severity of impairment was not fully supported by the treatment history or objective findings. (AR 73.) Dr. Dale determined that Plaintiff could lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk about 4 hours in an 8-hour workday, sit more than 6 hours in an 8-hour workday, and had no restrictions on pushing and pulling. (AR 74–75.) Dr. Dale further found that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, and crawl, but never crouch or climb ropes, ladders, or scaffolds. (AR 75.) Dr. Dale opined that Plaintiff had no manipulative, visual, or communicative limitations. (*Id.*) However, Dr. Dale opined that Plaintiff required use of a cane for uneven terrain, and should avoid concentrated exposure to fumes, odors, etc., and even moderate exposure to hazards. (AR 76.)

On July 17, 2018, state agency consultant Lee Lindquist, M.D., reviewed the medical records at the reconsideration level. (AR 81–93.) Dr. Lindquist agreed with Dr. Dale's findings. (*See* AR

---

[4] According to the revised regulations, for claims filed on or after March 27, 2017, the terms "prior administrative medical finding" or "PAMF" refer to the findings made by state agency medical and psychological consultants who review claims at the initial and reconsideration levels. *See* 20 C.F.R. § 416.913(a)(5).

91–93.)

B.     **Plaintiff's Statement**

In January 2018, Plaintiff completed an adult function report. (AR 237–44.)  Plaintiff stated that "[i]t feels like [his] leg is going to brake [sic] when [he] walk[s]," and that he could not sleep at night.  (AR 237.)  Plaintiff takes care of his two children, including helping them get ready for and taking them to school, in addition to picking them up.  (AR 238, 240, 241.)  Plaintiff also takes care of pets, sometimes with the assistance of his children "when [his] body can't do it."  (AR 238.)  According to Plaintiff, he is unable to put on socks, underwear, or pants.  (*Id.*)  He can shower, shave, and feed himself.  (*Id.*)  Plaintiff is able to prepare his own meals daily; he reported that making a sandwich takes him 30 minutes.  (AR 239.)  Plaintiff uses a stool and cane to assist with "whatever [he is] doing."  (*Id.*)  He can drive a car, go out alone, and shop in stores using an electric cart.  (AR 240.)  He is able to pay bills, count change, handle a savings account, and use a checkbook/money orders.  (*Id.*)  Plaintiff's hobbies include watching movies, playing with his kids, spending "computer time" with his friends and family, and playing games on his phone.  (AR 241.)  Plaintiff stated that his pain "sometimes doesn't allow [him] to be social."  (AR 242.)

Plaintiff indicated that his impairments affect his ability to squat, bend, stand, walk, kneel, climb stairs, complete tasks, and concentrate.  (AR 242.)  It is painful for him to squat, and he "can't bend."  (*Id.*)  He can stand for seven minutes and walk for 30 feet before needing to rest for 10 minutes.  (*Id.*)  Plaintiff uses a walker, wheelchair, and cane.  (AR 243.)

C.     **Administrative Proceedings**

The Commissioner initially denied Plaintiff's application for SSI benefits on March 20, 2018, and again on reconsideration on July 25, 2018.  (AR 102, 109.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 115.)  At the hearing on June 8, 2020, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 44–53.)

  1.   **Plaintiff's Testimony**

Plaintiff has pain that radiates from his right hip to his knee, and he walks with either two canes or a walker.  (AR 44, 48.)  He has ten chairs around the house for him to sit in so that he can

help his children and clean the house. (AR 44, 47.) When Plaintiff gets "tired of sitting" or when his knee gives out while walking, he has to lay down. (AR 44.) Plaintiff estimated he spends between two and eight hours lying down in a day. (AR 46.) He can do chores for about ten minutes before he starts to experience pain. (*Id.*) Plaintiff uses two canes to move around and do chores, including wiping down the kitchen sink and counters. (*Id.*) He goes to the grocery store once or twice a week, using an electric cart to get around the store. (AR 47.) Plaintiff can climb stairs using his canes and holding on to the handrail. (AR 48.)

### 2. Vocational Expert's Testimony

The ALJ asked the Vocational Expert ("VE") to consider a person of Plaintiff's age and education. (AR 54.) The VE was also to assume this person could: lift and carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk two hours in an eight-hour workday with the use of a cane for walking or otherwise traversing uneven terrain; sit for up to eight hours; operate foot controls with the left lower extremity occasionally but never with the right; and balance, stoop, and climb ramps and stairs occasionally. (AR 55.) This person could never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, in addition to being unable to tolerate exposure to hazards, including unprotected heights and operating heavy machinery. (*Id.*) The VE testified that such a person could performs the jobs of semiconductor bonder, Dictionary of Operational Titles ("DOT") code 726.685-066, document specialist, DOT code 249.587-018, and callout operator, DOT code 237.367-014, all unskilled and sedentary work with a specific vocational preparation ("SVP")[5] of 2. (*Id.*)

In a second hypothetical, the ALJ asked the VE to consider an individual with the same limitations as set forth in the first hypothetical, except that the person could stand and/or walk for only one hour in an eight-hour workday. (AR 56.) The VE testified that such a person could still perform the semiconductor bonder and callout operator jobs, in addition taper circuit layout, DOT code 017.684-010, which is also unskilled, sedentary work with an SVP of 2. (*Id.*)

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

The ALJ asked the VE, in a third hypothetical, to consider a person of Plaintiff's age and education, with the following limitations: lifting and carrying up to ten pounds rarely (i.e., five percent of the workday) and less than ten pounds occasionally; stand and/or walk with a cane for less than two hours of an eight-hour workday; sit for four hours in an eight-hour workday; balance and kneel rarely; handle or reach out in front of the body occasionally; finger or reach overhead with the bilateral upper extremities rarely; never twist, stoop, crouch, squat, or climb; and unable to walk for long periods. (AR 57–58.) The VE testified that there would be no work such a person could perform. (AR 58.) The same was true for a person from hypotheticals one and two who would need three to four unscheduled breaks for 10 to 15 minutes to either rest or lie down and stretch out. (AR 58–59.)

**D.   The ALJ's Decision**

In a decision dated June 22, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 18–31.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 20–31.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 29, 2017, the application date (step one). (AR 20.) At step two, the ALJ found Plaintiff's following impairments to be severe: osteoarthritis of the right hip; degenerative joint disease of the bilateral knees; degenerative disc disease of the spine, with chronic L1 fracture, scoliosis, and spondylosis of the lumbar spine; and morbid obesity. (*Id.*) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 24.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a reduced range of sedentary work as defined in 20 CFR [§] 416.967(a) in that [Plaintiff] can occasionally lift and or carry ten pounds and frequently lift and or carry less than ten pounds. [Plaintiff] can stand and or walk no more than one hour and sit up to eight-hours of an eight-hour workday, though he must use a cane for walking or traversing uneven terrain. [Plaintiff] can occasionally operate foot

7

controls with the left lower extremity and never operate foot controls with the right lower extremity. [Plaintiff] can never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, and he can occasionally balance, stoop, or climb ramps and stairs. He can tolerate no exposure to hazards, including unprotected heights or operating heavy machinery.

(AR 24–25.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 26.)

The ALJ determined that Plaintiff had no past relevant work (step four). (AR 30.) The ALJ ultimately concluded that, given his RFC, Plaintiff was not disabled because he could perform a significant number of other jobs in the national economy, specifically semiconductor bonder, taper circuit layout, and callout operator (step five). (AR 30–31.)

On June 29, 2020, Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on October 14, 2020. (AR 1, 7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.   LEGAL STANDARDS

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step

> two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's

conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.   DISCUSSION

Plaintiff contends the ALJ erred in his evaluation of PA Hoosier's opinion and Plaintiff's testimony. (*See* Doc. 16 at 2–14.) For the reasons stated below, the Court finds that the ALJ did not err.

**A.    The ALJ Properly Evaluated PA Hoosier's Opinion**

  **1.    Legal Standard**

On January 18, 2017, the Social Security Administration published comprehensive revisions

to its regulations regarding the evaluation of medical evidence. *See* 82 Fed. Reg. 5844. For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness." *Id.* In determining how "persuasive" the opinions of a medical source or PAMF are, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." *Id.* at § 416.920c(b), (c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. § 416.920c(a)–(b). In all cases, the ALJ must at least "explain how [the ALJ] considered" the supportability and consistency factors, as they are "the most important factors." *Id.* at § 416.920c(b)(2). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion or PAMF] will be." *Id.* at § 416.920c(c)(1). For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion or PAMF] will be." *Id.* at § 416.920c(c)(2).

The ALJ is required to articulate findings on the remaining factors (relationship with the claimant, specialization, and "other") only where "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." 20 C.F.R. § 416.920c(b)(2) & (3). An ALJ may address multiple opinions from a single medical source in one analysis. *Id.* at § 416.920c(b)(1).

The new regulations also expanded the definition of acceptable medical sources to include, *inter alia*, a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice," and a

"Licensed Physician Assistant for impairments within his or her licensed scope of practice." 20 C.F.R. § 416.902(a)(7), (8).

## 2. Analysis

On February 26, 2019, PA Hoosier submitted a medical source statement on Plaintiff's behalf, opining, as relevant here (*see* Doc. 16 at 12), that Plaintiff could sit for about four hours in an eight-hour workday and stand/walk for less than two hours (i.e., perform less than sedentary work). (AR 458–60.) In evaluating PA Hoosier's opinion, the ALJ stated:

> This opinion is unpersuasive. As for supportability, this checklist-style form appears to have been completed as an accommodation to [Plaintiff] and includes only conclusions regarding functional limitations without detailed support or rationale for those conclusions. As for consistency, this opinion is inconsistent with the record. In particular, multiple examinations of upper extremities revealed full strength and sensation to the upper extremities and normal cervical spine range of motion, and as such manipulating and reaching limitations would not be warranted.

(AR 29, internal citations omitted.) The ALJ ultimately found Drs. Dale, Lindquist, and Siekerkotte's opinions that Plaintiff was capable of sedentary work more persuasive. (*See* AR 28–29.)

The Court concludes that the ALJ properly evaluated the supportability and consistency of PA Hoosier's opinion. As to supportability, the ALJ properly considered PA Hoosier's failure to adequately explain his reasoning.[6] *See* 20 C.F.R. § 416.920c(c)(1) (requiring the ALJ to consider "supporting explanations presented by a medical source."). As the ALJ observed, PA Hoosier's opinion was given on a checklist form, with little information as to what clinical findings supported

---

[6] In finding PA Hoosier's opinion unpersuasive, the ALJ also stated that the medical source statement "appear[ed] to have been completed as an accommodation to [Plaintiff]." (AR 29.) An ALJ may not reject a medical opinion "based on the assumption that [the medical provider] has a natural tendency to advocate for his patients, but may do so if there is evidence that the [provider] is, in fact, acting as an advocate." *Nutter v. Berryhill*, No. 1:17-CV-00242-JLT, 2018 WL 4043204, at *8 (E.D. Cal. Aug. 23, 2018) (citing *Lester*, 81 F.3d at 832 (holding that the Commissioner "may not assume that doctors routinely lie in order to help their patients collect disability benefits" but "may introduce evidence of actual improprieties"); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (holding the ALJ properly determined treating physician's opinions "were entitled to less weight" because evidence showed that physician "had agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits"); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (ALJ properly discounted treating physician's report obtained solely for purposes of administrative hearing)). Here, the Court need not address whether PA Hoosier's opinion was an "accommodation" to Plaintiff, because the ALJ provided other valid reasons in addressing the supportability factor, discussed above. *See Barber v. Astrue*, No. 1:10–cv–01432–AWI–SKO, 2012 WL 458076, at *13 (E.D. Cal. Feb. 10, 2012) (finding harmless error where the ALJ "stated other valid reasons" for rejecting a physician's opinion) (citing *Stout*, 454 F.3d at 1054 and *Burch*, 400 F.3d at 679).

the opinion or why any particular section on the checklist was marked. (*See* AR 458–60.) Plaintiff contends that PA Hoosier's opinion was adequately supported by medical findings (*see* Doc. 16 at 12), as PA Hoosier's noted on the medical source statement form that Plaintiff's MRIs showed degenerative osteoarthropathy of Plaintiff's right hip and x-rays of Plaintiff's pelvis showed abnormal configuration of the right femoral head and "secondary OA and lateral subluxation of the hip" (*see* AR 458). PA Hoosier's mere reference to these imaging tests, however, does not adequately explain why, for example, PA Hoosier believed that Plaintiff could sit for only four hours in an eight-hour workday. Therefore, the lack of supporting explanations was a proper consideration in evaluating the supportability of PA Hoosier's opinion. *See* 20 C.F.R. § 416.920c(c)(1); *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (substantial evidence supported finding that medical opinion, expressed in a "fill-in-the-blank questionnaire," was "not persuasive because it is not supported by any explanation" or "pertinent exam findings."); *Ponce v. Comm'r of Soc. Sec.*, No. 1:20–CV–01664–EPG, 2022 WL 196529, at *3 (E.D. Cal. Jan. 21, 2022) (declining to find the ALJ erroneously rejected medical opinion where given on a "checkbox form with no significant narrative explanation" and "no citation to record evidence.").

As to consistency, the ALJ found that PA Hoosier's opinion was generally inconsistent with the medical record. (*See* AR 29.) Although the ALJ did not cite to any records regarding PA Hoosier's opinion that Plaintiff could sit for only four hours in an eight-hour workday and stand/walk for two hours, the preceding paragraphs and the ALJ's discussion of other medical opinions the ALJ found more persuasive contains a summary of medical records with specific citations and explanation. (*See* AR 26–29.) For example, the ALJ cited to treatment records from May 2018 that recorded normal, but painful, range of motion in the right hip. (AR 26, 392, 463.) From July to December 2018, Plaintiff reported persistent pain in his right hip, but physical examination findings were generally unremarkable. (*See* AR 469, 471, 476, 480–81, 487, 492, 498.) Treatment notes from April to September 2019 recorded right hip and leg pain, with reduced strength to the lower extremities and use of a cane to ambulate; examinations from that period showed normal thoracolumbar spine range of motion, negative straight leg raise, and no pain to palpitation of the spine. (AR 631–33, 637–39, 643–45, 649–51, 655–57, 661–63.) In April 2020,

Plaintiff continued to report pain in his right leg, which was aggravated by walking and "activity." (AR 604.)

While the medical record reflects that Plaintiff has physical impairments, it was reasonable for the ALJ to conclude that the record did not support the severity of PA Hoosier's opined restrictions, including that Plaintiff could sit for only four hours in an eight-hour workday. Indeed, the medical record primarily reflects that Plaintiff had difficulty walking, requiring use of a cane, and his pain appears to be exacerbated by movement. Therefore, the ALJ's conclusion that PA Hoosier's opinion was inconsistent with the objective medical evidence as a whole are legally sufficient and supported by substantial evidence. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

With regard to PA Hoosier's opinion that Plaintiff could stand/walk for two hours in an eight-hour workday, even assuming that the ALJ erred in finding that opinion unpersuasive, Plaintiff has failed to show that the error was not harmless. In response to the ALJ's second hypothetical about a person who could stand/and or walk for only one hour in an eight-hour workday, the VE testified that such a person could still perform the jobs of semiconductor bonder, callout operator, and taper circuit layout. (AR 56.) Accordingly, reversal would not be required, as the error would be "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted).

**B.    The ALJ Properly Discounted Plaintiff's Subjective Symptom Allegations**

In evaluating the credibility of a claimant's testimony regarding his impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only

reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR 26.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Here, the ALJ discounted Plaintiff's testimony because it was not supported by the objective medical evidence of record or his activities of daily living. (AR 25–28.)

### a. Objective Evidence of Record

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of . . . testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].' " *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15–cv–01308–SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680); *see, e.g.*, *Rollins*, 261 F.3d at 857 (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence). Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681.

With respect to the ALJ's reasoning that the objective evidence of record did not support Plaintiff's allegations regarding the severity of symptoms, the ALJ found that the medical evidence established that Plaintiff's impairments caused limitations in functioning that did not preclude all substantial gainful activity. (AR 26–27.) As discussed above, treatment records indicate that Plaintiff reported persistent hip pain in 2018, but physical examination findings were generally unremarkable, with some reports of normal, but painful, range of motion. (*See* AR 392, 463, 469, 471, 476, 480–81, 487, 492, 498.) Similarly, in 2019, Plaintiff was noted to have hip and leg pain, with reduced strength to the lower extremities and use of a cane to ambulate, but examinations from that period showed normal thoracolumbar spine range of motion, negative straight leg raise, and no pain to palpitation of the spine. (AR 631–33, 637–39, 643–45, 649–51, 655–57, 661–63.)

Thus, the ALJ provided substantial support by setting forth notable medical findings that were inconsistent with Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms. Therefore, the Court finds that the ALJ properly considered inconsistency with the objective medical evidence as a "clear and convincing" reason to discount Plaintiff's credibility. *See Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014).

### b. Activities of Daily Living

The ALJ determined that Plaintiff "has engaged in a somewhat normal level of daily activity

and interaction" such that Plaintiff's "ability to participate in [those] activities is inconsistent with [Plaintiff's] allegations of functional limitations." (AR 28.) An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility). Moreover, in evaluating a claimant's credibility, an ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Molina*, 674 F.3d at 1112. Even where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

Here, Plaintiff alleges an inability to work due to pain in his right leg and knee. (AR 44.) According to Plaintiff, he can stand for seven minutes and walk for 30 feet before needing to rest for 10 minutes; he spends between two and eight hours lying down in each day. (AR 46, 242.) Despite these alleged severe limitations, Plaintiff's statement and hearing testimony show he is able to: prepare simple meals; perform light household chores; drive a car; shop in grocery stores; manage his finances; play with and care for his two children, including taking them to and picking them up from school; and display sufficient concentration and attention to watch a movie, spend time on the computer with friends and family, or play games on his phone. (AR 46–48, 238–42.) The Court finds that these activities were reasonably considered by the ALJ to be inconsistent with Plaintiff's alleged inability to work due to his right hip and leg pain. (*See* AR 25, 28.)

While disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations, where the level of activity is inconsistent with a claimant's claimed limitation, those activities have bearing on the claimant's credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). As the Ninth Circuit explained in *Fair*, 885 F.2d at 604, "if [the plaintiff] remains able to perform ordinary household and personal tasks, then he has not carried his burden of proving that his pain prevents him from returning to [work]. While such reasoning may not hold up in all cases . . . it is sufficient here, as [the plaintiff] has not put forward any evidence that reconciles the inconsistency between his words and his actions." Such circumstances are evident in this case.

Ultimately, the ALJ's decision recognized that Plaintiff has some work limitations, but properly discredited Plaintiff's testimony that his limitations render him completely unable to work. *Fair*, 885 F.2d at 604; *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence."). Where the ALJ makes a reasonable interpretation of the claimant's testimony, it is not the Court's role to second-guess it. *Rollins*, 261 F.3d at 857.

In sum, the Court finds the ALJ discounted Plaintiff's subjective symptom allegations for clear and convincing reasons supported by substantial evidence.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff James Jones.

IT IS SO ORDERED.

Dated:   **September 6, 2022**         /s/ *Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE